## Steele v. Ferrell et al.

Oct. 10, 1941.

A. F. Childers for appellant.

J. E. Sanders and F. M. Burke for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellant instituted this action in equity against the appellees, Johnnie Ferrell, Sarah Ferrell, Cecil Daniels, and G. W. Swinney, alleging that he owned a life estate in a tract of land on the Nannie Fork of Big Branch, a tributary of Tug River in Pike County; that Johnnie Ferrell and Sarah Ferrell had wrongfully and unlawfully entered upon the land through their employee, Cecil Daniels, and cut and removed, and would continue to cut and remove therefrom, timber trees of various kinds and sizes; that G. W. Swinney operated a saw mill located near the mouth of the Branch and was engaged in manufacturing the timber into lumber; and that he was entitled to recover $1,000 damages for the cutting and removal of the timber, and to an injunction enjoining further trespassing, for which relief he specifi-

cally prayed. Special and general demurrers, as well as motions to quash the injunction bond, and to dissolve the temporary restraining order granted by the Clerk, were overruled, after which the material allegations of the petition were traversed by answer in which Johnnie Ferrell and Sarah Ferrell asserted title to the land by adverse possession. It was further alleged that Johnnie Ferrell and Sarah Ferrell had purchased the land from Mitchell Steele and wife, who, more than thirty years prior to the institution of the suit, had taken possession of and fenced the boundary without objection from Ralph Steele, the father of Mitchell Steele and appellant and the latter's grantor, and that appellant was estopped from asserting title because he had acquiesced in the acts of Mitchell Steele and his wife and assisted them in selling the land to the Ferrells. These allegations were traversed, and in an amended reply appellant alleged that Ralph Steele, their father, had conveyed other land to Mitchell; and that since the consideration for the conveyance to Mitchell, as well as for the conveyance of the land in controversy to appellant, was love and affection, and each conveyance contained a covenant of general warranty, Mitchell and his grantees, the Ferrells, were estopped from questioning appellant's title. An amended answer was filed specifically describing the land claimed by the Ferrells and reiterating the allegation that Mitchell Steele was in possession of the land at the time Ralph Steele, the father, executed his deed of conveyance to appellant. These allegations were controverted by reply, and in an amended petition the appellant reiterated the allegations of his reply on which he predicated his claim that the Ferrells were estopped from questioning his title.

Two major difficulties confronted appellant throughout the litigation, namely, his inability to prove title emanating from the Commonwealth to the land conveyed him by his father, and his inability to establish that any portion of it was within the boundary claimed by the Ferrells. Unless these difficulties are surmountable and the Chancellor was in error in adjudging that the Ferrells had title by adverse possession, it is unnecessary to discuss the nature of the estate conveyed appellant by his father or the timber rights conferred by the conveyance. Appellant's deed does not contain a statement as to the number of acres intended to be conveyed by his

father, nor is it possible to close the boundary from the calls given. From the phrase following the description, "so as to include the Nany Fork," and from some of the oral testimony, we are inclined to the belief that it was the intention of the grantor to vest appellant with title to at least some of the lands from which the timber was cut. But the only surveyor who testified on the subject was introduced by the Ferrells, and from his testimony and the plat prepared by him, it appears that the land in controversy is not within the boundary conveyed appellant. This testimony was not refuted, and in order to award appellant any portion of the disputed area it would be necessary for us to invent numerous calls and arbitrarily insert them in the description. If we should assume that experts in the art of surveying might be able to formulate a description of a portion of the disputed land to which the expressions contained in the deed and the oral testimony might indicate appellant was entitled, we would still be unable to find from the record before us that appellant had traced his title thereto from the Commonwealth. The deed to appellant did not show the grantor's source of title, and, if we concede that appellant's grantor had acquired title to a 100-acre survey and a 200-acre survey, traceable to the Commonwealth, the fact remains that title to a 50-acre tract forming a portion of the lands acquired by appellant's grantor was not so traced. Apparently the grantor attempted to divide his lands among his children, and whether any part of the 50-acre survey is comprised within the 100 acres in controversy, we are wholly unable to determine from the record. Moreover, as platted by the surveyor, no part of the boundary conveyed to appellant is within the 200 acre survey. The 100 acres claimed by the Ferrells as grantees of Mitchell Steele are neither within the boundaries of the 100-acre survey or the 200-acre survey, and all of the timber cut, with the exception of a small portion, was within the 200-acre survey.

It was to overcome this hiatus that appellant pleaded the alleged estoppel arising from the covenants of general warranty contained in the deeds to himself and Mitchell. It is predicated upon Section 2352 Kentucky Statutes, which provides:

"If such deed as is mentioned in the last section contained a general warranty of the estate it

purports to convey, and there shall be a claimant of the land who has received any estate, real or personal, by gift, advancement, descent, devise, or distribution from the vendor, such claimant shall be barred of recovery to the extent of the value of the estate so devised.''

The preceding section, 2351, refers to a deed purporting to convey a ''greater right or estate than the person can lawfully pass or assure.'' It is true that it is satisfactorily shown that the portion conveyed to Mitchell by his father was of greater value than that conveyed to appellant; but the deed to appellant, so far as the record discloses, did not purport to convey a greater estate than the father possessed. Moreover, it is conceded that Mitchell Steele had no paper title to the land in controversy. The true meaning and intent of the Statutes are discussed in our opinions in the case of Foreman v. Lloyd et al., 156 Ky. 772, 162 S. W. 83.

No proof was introduced to substantiate appellees' claim that appellant acquiesced or aided in the sale of the land to the Ferrells; and it is not necessary to mention the other minor defenses interposed, since we have reluctantly reached the conclusion that in addition to his failure to establish title to the land in controversy, appellant has slept upon whatever rights he may have possessed and lost them through his failure to take action within the prescribed period of limitation. The evidence shows that as early as 1910 Mitchell Steele cleared portions of the land in controversy and marked the outer boundaries. There is evidence that he claimed and dealt with the land as his own and enclosed the major portion of it with wire. At one time, to avoid the claims of creditors, he conveyed to his wife a tract embracing the boundary in dispute, and suit was brought to set the conveyance aside. A judgment decreeing the sale of the land in satisfaction of the indebtedness was entered, but shortly before the date of sale Mitchell Steele paid the judgment. Numerous witnesses testified to facts tending to establish the defense of adverse possession. While much of this testimony was contradicted by the appellant and his witnesses, the Chancellor deemed it sufficient to show title by adverse possession in the Ferrells and their grantor. Viewed in the aspect most favorable to appellant, the evidence as a whole leaves no more than a doubt as to the correctness of the

Chancellor's finding. No good purpose could be served by setting it forth in detail, since we are not only unwilling to interfere with the fact finding of the Chancellor where no more than a doubt as to its correctness exists, but are compelled in any event to hold that appellant has not shown a paper title to the boundary from which the timber was cut.

Judgment affirmed.